IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHERYL J. VIRGEN-PIERCE,** | ) | |
| | ) | |
| Claimant, | ) | No. 17 CV 04985 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Cheryl J. Virgen-Pierce ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.] The parties have filed cross-motions for summary judgment [ECF Nos. 21 and 22] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 21] is granted, and the Commissioner's Motion [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Effective January 23, 2013, Claimant filed applications for DIB and SSI, alleging a disability onset date of December 30, 2007. (R. 216–23.) At the administrative hearing, Claimant

amended her disability onset date to December 12, 2011. (R. 38-39.) Claimant's applications were denied initially and upon reconsideration, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (R. 11.) On December 22, 2015, Claimant, represented by counsel, appeared and testified at an administrative hearing before ALJ Luke Woltering. (R. 32–82.) The ALJ also heard testimony from vocational expert ("VE"), Diamond Warren. (R. 71–80, 298–99.)

On February 26, 2016, the ALJ denied Claimant's claims for DIB and SSI, based on a finding that she was not disabled under the Act. (R. 11–26.) The opinion followed the five-step evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since Claimant's onset date of December 11, 2011. (R. 13.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease, degenerative joint disease and osteoarthritis bilaterally of the knee, obesity, anxiety disorder, and mallet deformities in the fifth finger DIP joints. (R. 13.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926). (R. 14–16.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[1] and concluded:

> [Claimant] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that Claimant requires a cane to ambulate, cannot climb ladders, ropes, or scaffolds; can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl; can understand, remember, and carry out simple, three to four step instructions; can have no interaction with the general public, and; can tolerate occasional changes in a routine work setting.

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

2

(R. 16–17.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 24.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id*.) Specifically, the ALJ found Claimant could work as an address clerk (DOT # 209.587-010). (R. 25.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 26.) The Appeals Council declined to review the matter on May 10, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 442 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the

Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts that the ALJ made four errors. First, Claimant argues that the ALJ improperly evaluated the opinion of her treating physician. Second, Claimant contends that the ALJ's assessment of her subjective allegations and credibility was flawed. Third, Claimant asserts that the ALJ's step five finding with respect to jobs in the national economy that Claimant could perform is erroneous. Finally, Claimant argues that the ALJ's proffered RFC is incomplete.

**A.     The Treating Physician's Opinion**

Claimant first contends that the ALJ failed to give appropriate weight to the opinion of her treating physician, Robert Strugala, M.D. [ECF No. 21, at 12–16.] The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[2] 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). Because of a treating doctor's "greater familiarity with the

---

[2] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (*Id.*)

4

claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also See Stage v. Colvin,* 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell,* 627 F.3d at 306.

If a treating physician's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

Dr. Strugala completed a Medical Source Statement on November 19, 2014, indicating that Claimant was diagnosed with chronic lower back pain and degenerative joint disease of the right knee. (R. 51418.) He opined that Claimant's pain would constantly[3] interfere with her attention and concentration to perform even simple work tasks, and that Claimant was incapable of handling even low stress jobs. (R. 515.) Dr. Strugala further opined that Claimant could sit for ten to fifteen minutes at a time and could stand for five minutes before she would need to sit down. (*Id*.) Dr. Strugala stated that Claimant could sit for less than two hours in an eight-hour work day and

---

[3] The questionnaire does not define "constantly" although it defines "frequently" as meaning 34% to 66% of the work day. (R. 515.) Given that constantly seems to imply greater severity than frequently, the Court assumes that the doctor meant pain would interfere with Claimant's attention and concertation more than 66% of the work day.

5

stand/walk less than two hours in an eight-hour work day. (R. 516.) Additionally, Dr. Strugala limited Claimant to lifting less than ten pounds and recommended a cane for standing and walking. (*Id.*)

The ALJ afforded "little weight" to Dr. Strugala's opinion and offered four reasons for doing so. (R. 21.) The Court, however, finds that the reasons offered by the ALJ are insufficient to discount Dr. Strugala's medical opinion as a treating physician, an error necessitating remand.

First, the ALJ reasoned that "the extreme limitations reported by Dr. Strugala deviate widely from the fairly modest objective clinical signs related to the claimant's back, knee, and hand disorders." (R. 21.) The ALJ explained that "the only objective evidence cited by [Dr. Strugala] in support of [his] limitations were the claimant's slow ambulation, lumbar flexion to 90 degrees, and extension to 20 degrees." (*Id.*) But the ALJ did not fairly characterize Dr. Strugala's clinical findings in the record. Dr. Strugala's treatment notes contain additional clinical findings supportive of the limitations assessed in his medical source statement, namely a December 2011 MRI of the lumbar spine which revealed "subligamentous disc herniation" at L5-S1, "grade I spondylosis" at L4-L5, and "moderate hypertrophic changes" at L3-L4. (R. 464, 483.); s*ee Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[a]lthough by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records"). The ALJ apparently ignored or disregarded without any explanation Dr. Strugala's more substantive clinical findings in evaluating Dr. Strugala's opinion, focusing instead only on what the ALJ characterized as "fairly modest findings." This selective "cherry picking" prevents the Court from assessing the reasonableness of the ALJ's decision to afford the opinion only "little weight."

In other words, by focusing solely on the clinical findings Dr. Strugala reported in his medical source statement, the ALJ failed to assess Dr. Strugala's opinion in conjunction with his

6

treatment notes. Courts have found this to be a flaw that supports remand for more thorough analysis. *See Samuel v. Berryhill*, No. 17 C 4596, 2018 WL 1706370, at *7 (N.D. Ill. Apr. 9, 2018) (criticizing the ALJ for failing to account for treatment notes when evaluating a medical source statement); *Campbell,* 627 F.3d at 306 ("[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability").

Second, the ALJ stated that Dr. Strugala's opinion was inconsistent with the rest of the medical record and his own treatment notes. (R. 22.) The ALJ's opinion, however, does not contain any substantive analysis in this regard. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) ("[a] decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate"); *Kirsch v. Colvin*, No. 11 C 9199, 2014 WL 6091915, at *4 (N.D. Ill. Nov. 14, 2014) (criticizing ALJ's conclusory reasoning and lack of explanation for dismissing treater's opinion). The ALJ did not offer any examples to support his assertion that Dr. Strugala's opinion was inconsistent with other evidence. Rather, the record is replete with evidence that supports Dr. Strugala's assessed limitations. For example, a 2009 x-ray of Claimant's knee demonstrated "marked narrowing of the medial knee compartment." (R. 432.) In 2010, a second x-ray of the knee revealed bilateral knee spurring. (R. 468.) As noted above, the 2011 MRI of the lumbar spine demonstrated degenerative changes. (R. 464–65.) At her May 2013 consultative examination, the examining physician noted Claimant had "moderate to severe crepitus" in her knees. (R. 447.) On exam, Claimant had difficulty with knee squats, her gait was slow and antalgic, and she needed a cane to ambulate more than 50 feet. (*Id*.) On March 26, 2015, a knee x-ray again noted "marked narrowing of the right medical compartment" and "osteoarthritic change particularly in the right medial compartment." (R. 645.)

7

Despite this wealth of objective medical evidence potentially supportive of Dr. Strugala's opinion, the ALJ dismissed the doctor's opinion by simply claiming it was based on "mild" findings. (R. 22.) "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This is especially true here, considering the fact that the various imaging results described above predictably revealed a worsening in the condition of Claimant's lumbar spine and knee. *See Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) ("degenerative conditions often get worse over time"); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("[t]he term 'degenerative' implies that Roddy suffers from a condition that will get worse over time . . . it is not one that will remain stable or improve."). It appears that the ALJ impermissibly substituted her own lay assessment of the medical evidence for Dr. Strugala's medical assessment and opinion. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."). Consequently, the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ's next reason for discounting Dr. Strugala's opinion was that "the ultimate question of an individual's ability to work is an issue that is reserved to the Commissioner." (R. 21.) While the Court agrees with the ALJ that the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard medical evidence as a whole from the treating physician. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Thus, although it is true that the ALJ was not bound by Dr. Strugala's assertions that Claimant was too disabled to

work, *see Garcia v. Colvin*, 741 F. 3d 758, 760 (7th Cir. 2013), Claimant's physical and mental ability to work full time "is something to which medical testimony is relevant and if presented can't be ignored." (*Id.*) (citing *Bjornson v. Astrue*, 671, F.3d 640, 647–48 (7th Cir. 2012)).

Finally, the ALJ concluded that Dr. Strugala's opinion was contradicted by the ALJ's own observations of Claimant at the administrative hearing. (R. 21–22.) The ALJ commented that, while Dr. Strugala had opined that Claimant could sit only for ten to fifteen minutes at a time, the ALJ observed that Claimant was able to "sit uninterrupted for substantially longer than the 10 to 15 minutes opined by the clinician."[4] (R. 22.) The use of this so-called "sit and squirm test" to further discredit Dr. Strugala's opinion is "frowned upon in the Seventh Circuit." *Barrett v. Colvin*, 2014 WL 936839, at *9 (N.D. Ind. Mar. 11, 2014); *see also Powers v. Apfel*, 207 F. 3d 431, 436 (7th Cir. 2000) ("We doubt the probative value of any evidence that can be so easily manipulated as watching whether someone *acts* like they are in discomfort.") (emphasis in original). Furthermore, Claimant's ability to sit for more than ten to fifteen minutes during the hearing is not inconsistent with Dr. Strugala's opinion as Claimant's treating physician that Claimant was incapable of doing so on a regular and continuing basis. *See* Social Security Ruling ("SSR")[5] 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). As Judge Lozano noted in *Barrett*, "when the 'sit and stand' test is

---

[4] The ALJ specifically noted that "although the claimant testified that she could only sit for 10 to 20 minutes at a time, she remained seated for longer than 35 minutes at the hearing and got up to use the restroom only when prompted. After returning after only a short time, the claimant again was able to sit for the entirety of the nearly hour-long remainder of the proceeding." (R. 20.)

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

used in conjunction with so many other errors in interpreting the evidence, its usefulness is highly questionable at best." *Barrett,* 2014 WL 936839, at *9.

Further, although the ALJ was not required to give Dr. Strugala's opinion controlling weight, he still was required to address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 92-2p[6] states that treating source medical opinions like Dr. Strugala's "are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. § 404.1527." *Id.* (emphasis added). Here, the ALJ afforded Dr. Strugala's opinion little weight, but failed to adequately address or otherwise demonstrate consideration of many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, other than acknowledging that Dr. Strugala was Claimant's treating physician, the ALJ did not discuss the extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Strugala had a relevant specialty. Dr. Strugala specializes in musculoskeletal injuries[7], and has treated Claimant for knee and back issues from March 2010 to November 2014. (R. 474, 514-18.) Dr. Strugala has prescribed narcotic medication, (R. 479), referred Claimant to physical therapy and pain management, (R. 481, 483), and recommended injections in her knees and lower back. (R. 478, 484, 485, 486, 489.) In addition, as noted above, Dr. Strugala referred Claimant to MRI imaging, and reviewed the findings. (R. 464, 483.) The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R.

---

[6] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

[7] *Available at* http://www.midlandortho.com/physicians/dr-robert-strugala (last viewed July 20, 2018).

§ 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision.

For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Strugala, which is an error requiring remand.

**B.      The Credibility Determination**

Claimant next argues that the ALJ improperly assessed her subjective symptom allegations and credibility. [ECF No. 21, at 18-21.] The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[8] Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009).

On the record in this case, the Court finds that the reasons provided by the ALJ for her adverse credibility determination are legally insufficient and not supported by substantial

---

[8] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on February 29, 2016. (R. 28.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

11

evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

In particular, the Court finds that the ALJ improperly assessed Claimant's statements regarding her knee and lower back pain. Claimant testified that she was unable to work, in part, because of knee and back pain. (R. 48.) She stated that her knee and back pain prevent her from sitting, standing, and walking for prolonged periods of time, and further explained that she cannot walk more than one block and needs to take breaks when walking. (R. 53, 55.) Likewise, Claimant stated she can stand for about ten to fifteen minutes. (*Id.*) She also reported medication was not always helpful, and that she experienced good and bad days. (R. 58, 68.) The ALJ discounted her testimony because he believed that "treatment notes and examination reports [did] not contain the degree of limitation or frequency of objective abnormality one would expect." (R. 18.) But the fact that Claimant's pain allegations or other symptoms are not supported by medical evidence is, alone, insufficient to discredit her testimony. *See Villano*, 556 F.3d at 562 ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."); *Wyatt v. Astrue*, No. 09 C 05768, 2011 WL 2149414, at *13 (N.D. Ill. June 1, 2011) (An ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective medical testimony.'") (citations omitted).

Pain by definition is subjective. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Here, Claimant consistently reported issues with pain. *See* SSR 96-7p, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). For example, in her functional report, Claimant

reported having problems with prolonged standing and walking because of her back pain. (R. 255, 283.) She stated she could walk only half a block, and that she needed a cane to ambulate. (R. 260-61.) She made similar comments during the consultative examination and during a physical therapy evaluation. (R. 447, 500.) Moreover, the consultative examiner observed Claimant had severe crepitus in her knees and noted she needed a cane to ambulate greater than fifty feet. (R. 447.) Likewise, a physical therapist noted that pain was limiting Claimant's functioning, and that she had deficits in both strength and range of motion. (R. 502.) Further, as noted above, imaging of her knee confirmed spurring and "marked narrowing of the right medical compartment." (R. 432, 468, 645.) In addition, Claimant was prescribed pain medication, including Tramadol, and underwent multiple injections in her knee and lumbar spine. (R. 475, 485 486, 489, 548.) She was also referred to physical therapy and pain management. (R. 481, 507, 636.) While the ALJ does not need to address every piece of evidence, "he must articulate some legitimate reason for his decision." *Clifford*, 227 F.3d at 872 (citation omitted). "Claimant's subjective claims of symptoms and pain cannot be discounted simply because the ALJ feels her pain is not severe enough." *Wyatt*, 2011 WL 2149414, at *17.

The ALJ further discounted Claimant's subjective complaints because she "acknowledged engaging in a fairly wide range of daily activities." (R. 20.) While it is permissible for an ALJ to consider a claimant's daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"). Further,

13

when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy*, 705 F.3d at 639.

Here, the ALJ noted that Claimant reported to the consultative examiner that she was "capable of attending to most chores and activities of daily living aside from the need for assistance with shopping." (R. 20, 442.) The ALJ concluded that "these activities require significant physical and mental demands, which are not consistent with the level of limitation the claimant alleges." (*Id.*) In arriving at this conclusion, however, the ALJ ignored the numerous qualifications and limitations Claimant reported she encountered when performing daily activities. For example, although Claimant could prepare meals, she explained that she had to take breaks because of pain. (R. 285.) She also reported being dependent on her adult son. (R. 284.) Further, she noted that she does not mop, sweep, or do yardwork because of pain. (R. 286.) Notably, Claimant testified that she experiences good days and bad days. (R. 68.) "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss*, 555 F.3d at 562; *see also Castaneda v. Colvin*, No. 14 C 7023, 2016 WL 427511, at *2 (N.D. Ill. Feb. 4, 2016) (criticizing ALJ for failing to explore the manner or duration of chores Claimant reported performing).

More importantly, Claimant's limited activities do not demonstrate that she can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine*, 360 F.3d at 755 (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [her] being able to work eight hours a day five consecutive days of the week). "The Seventh Circuit has 'long bemoaned' ALJs who "have equated the ability to engage in some

activities with an ability to do full-time work, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation.'" *Castenada*, 2016 WL 427511, at *2 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014).

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. While the Court is not saying that the ALJ should have accepted Claimant's allegations completely and without question or analysis, the foundation underlying his assessment was inadequate. On remand, the ALJ should reassess Claimant's subjective symptom statements with due regard for the full range of medical evidence, following the requirements of SSR 16-3p.

**C.    Other Issues**

Because the Court is remanding only on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant should make no assumptions either. Rather, it is simply unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 21] is granted, and the Commissioner's Motion [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

15

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 22, 2018